GEORGE W. MATTHEWS ET AL  }
          vs.                           }  March Term, 1848.
WILLIAM D. MERRICK.               }

[PRACTICE IN CHANCERY.]

THE process of *subpœna scire facias* is the proper and appropriate proceeding to revive a decree which has abated by death, or where a female complainant has married, or the decree has become dormant by lapse of time.

A promise to allow a defendant a credit upon a decree against him by which he was induced to waive his right of appeal, rests upon a good and valid consideration.

An unqualified offer by complainants to allow the defendant a credit upon a decree in their favor, which offer was the result of negotiations previously had between the parties to settle the matters in dispute, in a friendly manner, cannot afterwards be withdrawn by them.

[The facts of this case are sufficiently stated in the Chancellor's opinion.]

THE CHANCELLOR :

I do not think the objection taken to the form of the proceeding adopted in this case can be sustained.

The process of *subpœna scire facias* appears to be the proper and appropriate proceeding to revive a decree which has abated by death, or where a female complainant has married, or the decree has become dormant by lapse of time. 1 *Bland*, 545; 3 *Bland*, 326.

Upon the merits of the case, however, there is certainly some difficulty, though I am of opinion that to some extent at least the merits are with the defendant, and that he is entitled to a credit upon the decree.

It appears that two bills were filed in this court against the defendant on the 2d of August, 1833. In one he was called upon to account as the executor of Rose Matthews, and in the other as administrator, *de bonis non*, of Luke F. Matthews, and the parties, complainants for the most part, were the same. Luke F. Matthews and Rose Matthews were the father and mother of the complainants, and the defendant was their brother-in-law, having married their sister.

The cases appear to have been prosecuted *pari passu*, and were brought to hearing before the Chancellor on the same day, to wit, on the 2d of August, 1841, when decrees were passed dismissing the bill against the defendant, as executor of Rose Matthews, with costs, and in the other case decreeing the payment by him of certain sums of money to the several complainants, and the costs of the suit.

From the report of the Auditor in the case against the defendant, as executor of Rose Matthews, it appeared that he had overpaid the estate the sum of $920 10, and this report was ratified by the decree which dismissed the bill.

An appeal was taken in due time by the defendant in the other case, and an approved appeal bond filed, but for some unexplained reason, in reference to which we can only speculate, the appeal was not prosecuted, and was abandoned.

No further steps appear to have been taken in the case until the 16th of November last, when petitions were filed praying for writs of *subpœna scire facias* to revive the decree.

Upon the answers to these petitions the question arises, which is now to be considered. These answers allege, that on the 20th of December, 1844, and subsequent to the decree, the complainant, William Matthews, for himself, and as the duly authorized agent and representative of the other parties, stipulated and agreed with the defendant that he should receive a credit on the decree against him for the sum which he had overpaid on account of the estate of Rose Matthews. The evidence relied upon in support of this pretension is to be found in a letter from the complainant, William Matthews, to the defendant, dated the 20th of December, 1844.

It is quite apparent from this letter that the subject of settling these controversies by friendly compromise had been previously discussed between the parties. The writer, in combating the claim of the defendant to be allowed interest on his overpayment, says, in substance, that he does no more than justice sanctions in insisting upon his first proposition, that is, to allow the $920 10, without interest, the defendant paying the balance of the decree against him, with interest and cost. That his first

impressions inclined him to yield to the suggestions of the defendant to allow him interest on his overpayment, but upon further investigation, he had come to a different conclusion; and finally declares his own willingness, and the willingness of the other parties to settle, as first proposed, for the purpose of closing up the matter in a spirit of peace and harmony.

The question is upon the effect of this letter, its genuineness being admitted, and it being also admitted that the writer was a party to the original decree, and the solicitor and agent of the other parties.

When these negotiations commenced, and what influence they may have had in inducing an abandonment of the appeal, it is impossible to ascertain with any great degree of certainty, but it is very obvious that the parties did not consider the decree of August, 1841, as conclusively settling the questions in issue between them, and that for some reason or other, the defendant abandoned, or pretermitted the right which he had secured to have the decree against him reviewed by the appellate court. If these negotiations induced him to waive his appeal, then the promise to allow the credit which was the result of them, rests upon a good and valid consideration, and should be enforced. And I confess that looking to the relations of the parties, the character of the transactions out of which the claim arises, and the scope and tenor of the letter, the impression upon my mind is very strong that but for these efforts to bring about a friendly settlement, and the natural and praiseworthy desire to compromise a family controversy, the case would have been subjected to the revision of the superior court.

The argument for the counsel for the complainant, in which this credit is now resisted, insists that the offer to allow it was prompted by a desire to insure a speedy settlement of the claim, which object not being accomplished, the offer was withdrawn, and accordingly we find in the agreement attached to the letter, that prior to the filing the petition for the *subpœnas scire facias*, the authority of the counsel of the complainant to give the credit was revoked.

But the question is, had the complainants the right to do

this ? They do not in the letter referred to make the immediate payment of the residue of the claim a condition precedent upon which the credit was to be given, and their neglect or forbearance from that time until 1847, nearly three years, to take measures to coerce payment of the decree is strong to show that no such implied condition was intended. If the complainants had designed to affix a condition to their proposition to allow this credit, they should have said so, and then the other side would have known precisely the ground upon which they stood. But this was not done, and he rested and reasonably rested upon the well grounded confidence that the credit would be allowed him, and the forbearance of the complainants to press the payment of the residue of the claim was well calculated to assure him that his understanding in regard to the proposition was their's likewise. The letter in question refers to the former proposition of the plaintiffs to allow this credit, and insists upon this proposition, rejecting at the same time the defendant's pretension to be allowed interest upon the credit. This, then, in the discussions between these parties was plainly the complainants' view of the merits of the question, whilst the defendant was contending for a larger credit, and contending too, as it would seem from the letter, with good prospects of success, for the writer admits that at one time he was impressed with the justice of the defendant's view of the subject. The letter is, in my opinion, an unqualified offer to allow the credit in question, and I strongly incline to think is not merely gratuitous, but founded upon a consideration which entitles it to the favorable consideration of the court.

Thos. S. Alexander, for Complainants.
A. Randall, for Defendant.